**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HPG INTERNATIONAL, INC., | : Civil Action No. |
| | : |
| | : |
| | : |
| Plaintiff, | : |
| v. | : Judge |
| | : |
| HILTON WORLDWIDE HOLDINGS, INC. and | : |
| THE PARKER COMPANY, | : Complaint |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff HPG International, Inc. ("HPG" or "Plaintiff"), by its undersigned counsel, hereby files the following Complaint for injunctive relief and monetary damages against Defendants Hilton Worldwide Holdings, Inc. ("Hilton") and The Parker Company ("Parker") (collectively "Defendants"), for actual, threatened, and imminent: (i) misappropriation of trade secrets/confidential information under federal and state law; (ii) copyright infringement; and (iii) unfair competition; and in support thereof aver as follows:

## THE PARTIES

1.      Plaintiff, HPG International, Inc., is a Delaware corporation with a principal place of business in Hatfield, Pennsylvania.

2.      Plaintiff provides strategic solutions for furniture, fixtures, and equipment ("FF&E") and operating supplies and equipment ("OS&E") supply chain services for the hospitality industry including but not limited to serving the Middle East.

3.      Defendant, Hilton, is an internationally known Delaware Corporation with its corporate headquarters located at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102, providing hotel services throughout the Commonwealth of Pennsylvania and worldwide.

4.      Defendant, Parker, is a limited liability company organized and existing under the laws of the state of Florida, with its headquarters located at 6205 Blue Lagoon Drive, Suite 300, Miami, Florida 33126.

## JURISDICTION & VENUE

5.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 because Plaintiff asserts a claim for statutory misappropriation of trade secrets under the Defendant Trade Secrets Act of 2016, 18 U.S.C. §1836 et seq., a claim for copyright infringement under 17 U.S.C. §501 et seq., and a claim for unfair competition under 15 U.S.C. §1125 et seq. All other claims are related to the federal claims that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over the Plaintiff because it is a citizen of the Commonwealth of Pennsylvania within the meaning of 28 U.S.C. Section § 1332.

7.      This Court has personal jurisdiction over Hilton because Hilton carries on continuous and systematic business within this Commonwealth.

8.      Hilton manages, franchises, and owns and operates numerous hotels in the Commonwealth, including Hilton Penn's Landing, which is located within this judicial district.

9.      Hilton regularly transacts business in the Commonwealth as it contracts to supply services and things to its hotels located in the Commonwealth.

10.     This Court has personal jurisdiction over Parker, which also carries on continuous and systematic business in this Commonwealth.

11.     The Parker website (https://www.parkerinternational.com/Home/Portfolio) lists a portfolio of projects including fifteen venues in the Commonwealth of Pennsylvania.

12.     At least six of the fifteen Pennsylvania properties listed in Parker's portfolio are located within this judicial district, including the Holiday Inn City Line, Radisson Philadelphia, Sheraton Society Hill, The Rittenhouse, the Warwick Hotel and the Valley Forge Hilton.

13.     Upon information and belief, Parker maintains employees in the Commonwealth of Pennsylvania, including Greg Clemons, who maintains a Linked Profile identifying himself as "General Manager at the Parker Company" in Philadelphia, PA.

14.     Jurisdiction is also proper because Plaintiff's suit arises from its copyrights and trade secret information, which was created, developed, and assigned to Plaintiff in this Commonwealth.  Defendants' injury to Plaintiff's copyrights and trade secret information is being inflicted on Plaintiff and felt by Plaintiff in this Commonwealth.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3), as Plaintiff resides in this judicial district and because the harm from the conduct alleged is felt by Plaintiff in this judicial district.

16.      Immediate injunctive relief is sought pursuant to Fed. R. Civ. P. 65.

## Factual Allegations Common to All Counts

17.     Paragraphs 1 through 16 are hereby incorporated by reference as though set forth at length herein.

## HPG's Business and Trade Secrets

18.     HPG was formed in 2018 as a Delaware corporation operating from its headquarters in the Commonwealth of Pennsylvania.

19.     HPG's business is related to procurement and advisory services for the hospitality industry.  HPG has access to a global base of manufacturers and distributors.  In addition to providing FF&E and OS&E solutions and services for the hospitality industry, HPG also provides sustainable supply chain strategies to reduce risk management and provide significant cost savings for its clients.

20.     HPG has spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information ("Confidential Information"), including, *inter alia*, its goodwill; name recognition; reputation; as well as its specialized FF&E and OS&E services and files, including bill of quantities ("BoQ") files, master catalogues, vendor databases, methods of pricing and costs, pricing information, financial data, programs, software and systems, compilation methods, techniques and processes, analytics, and data compilations.

21.     HPG's Confidential Information is among its most valuable assets, provides HPG with a competitive advantage, would be very valuable to a competitor, and is deserving of trade secret protection under the law.

22.     HPG takes reasonable steps to protect the secrecy of its Confidential Information. These reasonable steps include:

        a.  HPG has an internal policy not to share files containing accessible Confidential Information;

        b.  HPG provides its products and materials to clients and/or third parties in two ways: i) as files with any Confidential Information removed, or ii) in formats such that the client or third party cannot isolate the confidential information and reverse engineer the product or material;

4

c.  HPG provides confidentiality language on each of its products and materials shared with clients or third parties, notifying recipients that the products and materials contain confidential, proprietary information and prohibiting recipients from sharing such information.

d. HPG enters into non-disclosure agreements and confidentiality agreements with clients and third parties, including suppliers, with respect to its Confidential Information.

23.     HPG did not authorize Hilton to retain, use, or disclose HPG's Confidential Information outside the scope of its employment, for its own benefit, or for the benefit of a competitor, all of which is prohibited.

**Katara Hospitality's Request for Proposals & HPG's Contract for Services for the Salwa Beach Resort**

24.     On February 5, 2019, Katara Hospitality ("Katara"), a company licensed in Qatar, issued a Request for Proposals (RFP) seeking proposals for the appointment of a consultant procurement agency for the Salwa Beach Resort Project ("Project").   The RFP described the project scope as follows:

"The project scope is divided in 2 stages.  Stage 1 will be awarded with this RFP whilst stage 2 will be subject to further approvals and awarding by Katara Hospitality."

(A true and correct copy of the RFP is attached hereto as Exhibit "A" and incorporated herein by reference)

25.     HPG submitted a proposal in response to the RFP from Katara, providing its bid for both stages.

26.     On March 26, 2019, HPG entered into a service contract ("Contract") with Al Rayyan Hospitality ("Al Rayyan") and Katara, both Qatari businesses in Doha, Qatar.   HPG's

proposal for "Stage 1"and "Stage 2" was attached to the Contract as an exhibit and incorporated by reference.

27.     The Contract was an award to HPG of its consultant/procurement services for "Stage 1" of the Salwa Beach Resort, which is located at Salwa Beach, Qatar and permitted Katara to exercise an option for Stage 2.  A true and correct copy of the Contract is attached hereto as Exhibit "B."

28.     Salwa Beach Resort is owned by Katara Hospitality.

29.     Upon substantial completion of construction, Salwa Beach Resort is intended to be operated by Hilton and its affiliates.

30.     The Contract provides that per the agreed guidelines from the February 5, 2019 RFP, HPG will be hired to assist in establishing OS&E and FF&E specifications, BoQs, and quantities by categories for the Salwa Beach Resort, establish price/quality categories for operator selection, and establish the overall budget for all OS&E/FF&E merchandise at the Resort. *See* Exhibit "A" at p. 30.

31.     In the scope of the Contract, HPG provided Katara Hospitality with its instruments of services, products and materials related to its FF&E and OS&E services.  Specifically, HPG provided Katara Hospitality its FF&E and OS&E BoQ files, which contained HPG's Confidential Information, including proprietary compiled financial data, budget costs, and pricing information. HPG entrusted Katara Hospitality with access to HPG's Confidential Information and trade secrets.

32.     In the scope of the Contract, HPG provided Hilton with its products and materials regarding its FF&E and OS&E services. Specifically, HPG provided Hilton with the same Confidential Information, including FF&E and OS&E BoQ files it had provided Katara

Hospitality, except that the files did not include HPG's proprietary compiled financial data, budget costs, and pricing information from the files. HPG intentionally sent Hilton its FF&E and OS&E BoQ files without including its proprietary compiled financial data, costs and pricing so that Hilton did not have access to HPG's Confidential Information.

33.     HPG provided Hilton with the aforementioned instruments of service, products and materials electronically on a shared file drive operated by Hilton and which HPG was granted access to (the "Hilton Drive").

34.     On June 30, 2019, HPG completed its services under the Stage 1 contract.

35.     On July 2, 2019, HPG attended an in-person meeting with representatives of Katara to present the Stage 1 work product.

## Katara Hospitality's Award of Stage 2 to HPG and Cancellation of the Award for the Salwa Beach Resort Project

36.     On July 4, 2019, HPG was provided written notice of an award of Stage 2 to HPG for its consultant/procurement services for "Stage 2" of the Salwa Beach Resort. (A true and correct copy of the written notice of award is attached hereto as Exhibit "C" and incorporated herein by reference).

37.     On or about July 12, 2019, Katara underwent a change in management. Andrew Humphries was appointed as the acting CEO of Katara Hospitality

38.     Between July 4, 2019 and October 8, 2019 HPG sought to negotiate legal terms and conditions for the Stage 2 agreement with Katara. However, Katara and HPG never reached a final agreement on the legal terms and conditions for Stage 2.

39.     Between July 4, 2019 and October 8, 2019, HPG proceeded with work on Stage 2 of the Project as required by Katara's exercise of the option to award Stage 2 and to maintain the

schedule set forth in the Contract.  This work included providing additional instruments of service to Katara Hospitality and Hilton.  For example, HPG sent additional bill of quality ("BoQ") files to Katara Hospitality, containing Confidential Information, including financial information, pricing and budgets, and workflows and specifications.  HPG also sent similar files excerpting some of HPG's proprietary and confidential information to Hilton via the Hilton Drive.

40.     On October 7, a conference call was convened by Katara Hospitality during which HPG was verbally notified of the cancellation and termination of the award.  During the conference call, Katara represented and assured HPG that its instruments of service would not be utilized on the Project.

41.     On October 8, 2019, HPG was emailed a written notice of cancellation of the award for the Project from a representative of Katara Hospitality.  The October 8, 2019 email included a formal letter from Katara dated September 25, 2019 cancelling the award to HPG.    A true and correct copy of the October 8, 2019 email and the September 25, 2019 letter is attached hereto as Exhibit "D" and incorporated by reference.

42.     HPG was not provided with written notice of the cancellation or termination prior to October 8, 2019.

43.     Upon information and belief, Al Rayyan and Katara Hospitality issued an award to Parker for consultant/procurement services for Stage 2 of the Salwa Beach Resort between September 25, 2019 and October 7, 2019.

44.     Parker is a direct business competitor of HPG.

**Hilton's Copying of HPG's Files**

45.     On October 11, 2019, HPG sent Katara Hospitality, Hilton, and Parker a demand to return any and all of HPG's materials and products containing HPG's Confidential Information,

including but not limited to HPG's BoQ files, financial information, budget and cost information, workflows and specifications, and compiled data provided by HPG.

46.    On October 17, 2019, HPG accessed the Hilton Drive and identified that all of its instruments of service, products and materials that were previously provided to Hilton were still on the Hilton Drive.

47.    HPG also identified a new file folder in the Hilton Drive entitled "Katara." The "Katara" folder contained copies of HPG's instruments of service, products and materials, previously provided to Katara Hospitality, and which included HPG's Confidential Information in the files.  At least one of the instruments of service, in the Hilton Drive, had the HPG notice of proprietary and confidential information, which had been embedded by HPG in the instrument, deleted.   Some of the Confidential Information, which was provided only to Katara Hospitality but never provided to Hilton.  Screenshots of the "Katara" folder taken on October 17, 2019 are attached hereto as Exhibit "E."

48.    At least two of the file names in the "Katara" folder were nearly identical to the file names provided to Katara Hospitality by HPG.  At least one file name included "Parker" at the end of the name. *See* Exhibit "E."

49.    The files in the Katara folder included copies of three BoQ files that HPG provided to Katara Hospitality.  The file names of the copies were:

- OSE Budget_Hotel_24July_Non-F&B_RS27Aug19_PARKER.xls,

- OSE Budget_Staff Village_28Aug19_Direct Sourcing.xls, and

- Parker HS CWM WP AWP TRS – REVISED.xlsx.

*See* Exhibit "E."

50.     The "OSE   Budget_Hotel_24July_Non-F&B_RS27Aug19_PARKER.xls"   and "OSE Budget_StaffVillage_28Aug19_Direct Sourcing.xls" files include HPG's name and logo as it appears in HPG's original files, as well as the following confidentiality language:

> PROPRIETARY   INFORMATION:   THIS   DOCUMENT   IS PROPRIETARY  AND  CONFIDENTIAL.  NO  PART  OF  THIS DOCUMENT MAY BE DISCLOSED IN ANY MANNER TO A THIRD PARTY WITHOUT THE PRIOR WRITTEN CONSENT OF HPGI.

*See* Exhibit "E."

51.     The "Parker HS CWM WP AWP TRS – REVISED.xlsx" file had HPG's name, logo, and confidentiality language removed from the file. The folder containing this Parker file shows an October 6, 2019 creation date. *See* Exhibit "E."

52.     On October 27, 2019, HPG again accessed the Hilton Drive. As of October 27, 2019, the Hilton Drive only contained a single file folder titled "Hilton", which contains Hilton's own files and no copies of HPG's files.

53.     At minimum, HPG's BoQ files containing its Confidential Information, along with other trade secrets, were provided to Hilton by Katara Hospitality.

54.     Upon information and belief, at least HPG's BoQ files containing its Confidential Information, along with other trade secrets, were subsequently copied, disclosed, and distributed to Parker by Hilton through the Hilton Drive.

55.     Upon information and belief, at least HPG's BoQ files containing its Confidential Information, along with other trade secrets, were subsequently copied, used, disclosed, and distributed to third parties by Parker.

## COUNT I

### MISAPPROPRIATION/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b)(1)) *PLAINTIFF v. DEFENDANTS*

56.     Plaintiff incorporates paragraphs 1 through 55 as if set forth fully herein.

57.     HPG's Confidential Information, including its financial information, budgets and costs, and pricing information schemes in its BoQ files are trade secrets that are subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-1839.

58.     HPG's Confidential Information contained in its BoQ files that Katara Hospitality provided to Hilton and that Hilton subsequently disclosed and distributed on the Hilton Drive are trade secrets subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-1839.

59.     This information relates to a product or service used in or intended for use in interstate commerce.

60.     This information is financial, business, and economic information which derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by others who can obtain economic value from the disclosure or use of the information, such as Defendants, which can profit from its use or disclosure.

61.     HPG considers this type of information items to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.  This includes through the use of Non-Disclosure Agreements, Confidentiality Agreements and the proprietary and confidentiality language embedded within each file, the policies in place regarding sharing of its BoQ files, and the steps taken to limit access to information and BoQ files to clients and third parties.

11

62.     At the time of Hilton's disclosure and distribution of the information on the Hilton Drive, Defendants knew that Hilton, as the operator of Salwa Beach Resort, was under a duty to maintain the information's secrecy or limit its use, especially after Katara Hospitality cancelled HPG's Stage 2 offer and entered into a contract with HPG's competitor.

63.     Hilton has already disclosed and distributed HPG's BoQ files containing its proprietary financial, budget, and pricing information on the Hilton Drive.

64.     Upon information and belief, Hilton has disclosed and distributed and/or will disclose and distribute HPG's BoQ files containing its proprietary financial, budget, and pricing information to Parker.

65.     Upon information and belief, Parker directed, participated, and/or benefited from Hilton's use or disclosure of HPG's confidential, trade secret information.

66.     Upon information and belief, Defendants are utilizing and/or will utilize HPG's confidential, proprietary and trade secret information to directly or indirectly solicit and divert HPG's business.

67.     The foregoing conduct by Defendants constitutes a malicious and willful misappropriation and misuse of, and threatened further misappropriation of, HPG's confidential, trade secret information to their own advantage in direct competition with HPG.

68.     Defendants engaged in this conduct intending or knowing that it would injure HPG.

69.     As a result of the Defendants' misappropriation and use of the confidential, proprietary and trade secret information, Defendants have violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)).

70.     As a direct and proximate result of Defendants' violation of the Defend Trade Secrets Act of 2016, HPG has sustained and will continue to sustain substantial irreparable harm and damages, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests judgment in its favor, and against Defendants of injunctive relief from the conduct set forth above, damages in excess of $75,000.00, and attorneys fees and costs as set forth in its Prayer for Relief.

## COUNT II

### MISAPPROPRIATION/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### *PLAINTIFF v. DEFENDANTS*

71.     Plaintiff incorporates paragraphs 1 through 70 as if set forth fully herein.

72.     HPG's Confidential Information, including its financial information, budgets and costs, and pricing information schemes in its BoQ files are trade secrets that are that are subject to protection under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5302-05. HPG's Confidential Information contained in its BoQ files that Katara Hospitality provided to Hilton and that Hilton subsequently disclosed and distributed on the Hilton Drive are trade secrets.

73.     This information derives independent economic value by not being accessible through proper means, to others who can obtain economic value from its disclosure or use, such as Hilton and Parker, who can profit from its explicit and/or implicit and/or intentional and/or inevitable use or disclosure.

74.     HPG has taken reasonable measures under the circumstances to maintain the confidential nature of this information, including through the use of Non-Disclosure Agreements, Confidentiality Agreements and the confidentiality language embedded within each file containing

proprietary information, the policies in place regarding sharing of its BoQ files, and the steps taken to limit access to information and BoQ files to clients and third parties.

75.     HPG disclosed its Confidential Information to Katara Hospitality pursuant to its Agreement with Katara Hospitality, and while it was in a position of trust and confidence. Katara Hospitality disclosed the Confidential Information to Hilton without HPG's consent under circumstances that make it inequitable and unjust for Hilton to have misappropriated the materials and to be using them for its own benefit and for the benefit of Parker.

76.     Upon information and belief, the proprietary and confidential information was supplied to Hilton and the above-referenced Parker files created prior to the cancellation and termination of HPG's award.

77.     At the time of Hilton's disclosure and distribution of the information on the shared drive, Defendants knew that Hilton, as the operator of Salwa Beach Resort, was under a duty to maintain the information's secrecy or limit its use, especially after Hilton learned that Katara Hospitality was cancelling HPG's Stage 2 award  along with Katara's intent to award the Project to HPG's competitor, Parker.

78.     Hilton has already disclosed and distributed HPG's BoQ files containing its proprietary financial, budget, and pricing information on the Hilton Drive.

79.     Upon information and belief, Hilton has disclosed and distributed and/or will disclose and distribute HPG's BOQ files containing its proprietary financial, budget, and pricing information to Parker.

80.     Upon information and belief, Parker directed, participated, and/or benefited from Hilton's use or disclosure of HPG's confidential, trade secret information.

81.     Upon information and belief, Defendants are utilizing and/or will utilize HPG's confidential, proprietary and trade secret information to directly or indirectly solicit and divert HPG's business.

82.     The foregoing conduct by Defendants constitutes a misappropriation and misuse, and threatened further misappropriation, of the Company's confidential, trade secret information in violation of the Pennsylvania Uniform Trade Secrets Act.

83.     The Pennsylvania Uniform Trade Secrets Act provides for injunctive relief in the case of an "actual or threatened" misappropriation of a trade secret. 12 Pa. C.S.A. § 5303(a).

84.     As a consequence of the foregoing, HPG has suffered and will continue to suffer irreparable harm and loss, for which there is no adequate remedy at law.

85.     At all times material, Hilton knew, or should have known, that HPG's Confidential Information is deserving of trade secret protection under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. §5301 et seq.

86.     As a consequence of the foregoing, HPG has suffered and will suffer damages.

87.     Defendants' misappropriation of HPG's trade secrets was and is willful and malicious, giving rise to double damages, plus reasonable attorneys' fees pursuant to the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5302.

WHEREFORE, Plaintiff respectfully requests judgment in its favor, and against Defendants, of injunctive relief from the conduct set forth above, damages in excess of $75,0000, and attorneys fees and costs, as set forth in its Prayer for Relief.

## COUNT III

### DIRECT COPYRIGHT INFRINGEMENT
### _PLAINTIFF v. DEFENDANTS_

88.     Plaintiff incorporates paragraphs 1 through 87 as if set forth fully herein.

89.     HPG is the owner of all right, title and interest in and to the copyrights of each of the BOQ files covered by the following:

- Copyright Certificate of Registration No. TXu 2-162-886, registered on October 24, 2019,

- Copyright Certificate of Registration No. TXu 2-163-563, registered on October 24, 2019, and

- Copyright Certificate of Registration No. TXu 2-163-561, registered on October 24, 2019.

True and correct copies of the certificates of the Copyright Registrations are attached hereto as Exhibit "F," Exhibit "G," and Exhibit "H." Redacted copies of each specific BoQ file covered by the October 24, 2019 Certificates of Registration (the "Copyright Works") are attached hereto as Exhibit "I," Exhibit "J," and Exhibit "K." Exhibit I corresponds to Registration No. TXu 2-162-886; Exhibit J corresponds to Registration No. TXu 2-163-563; and Exhibit K corresponds to Registration No. TXu 2-163-561.

90.     HPG's Copyright Works were originally jointly authored by:

a) HPG as works for hire made by employees of HPG in the scope of their employment, and

b) Provision Advisory Services ("Provision"), a limited liability company, as works made for hire by Provision employees in the scope of their employment. Provision subsequently assigned all rights, title, and interest in the Copyright Works to HPG on October 23, 2019.

91.     The Copyright Works are copyrightable subject matter under the copyright laws of the United States.

92.     On or about October 24, 2019, HPG complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificate of Registration Nos. TXu 2-162-886, TXu 2-163-563, and TXu 2-163-561.

93.     Plaintiff has complied in all respects with the provisions of the Copyright Act, 117 U.S.C. §§101 et seq., and all other laws governing copyright to secure the exclusive rights and privileges in and to the copyrights of the items identified herein.

94.     Upon information and belief, Defendants had direct access to the Copyright Works because they were placed on the Hilton Drive after HPG was terminated.  Upon information and belief, Defendants accessed and/or had access to the Copyright Works prior to the use and distribution of the infringing files by Defendants.

95.     Defendant Hilton has knowingly and willfully produced, reproduced, and distributed HPG's Copyright Works without HPG's consent or any legal justification or excuse.

96.     Upon information and belief, Defendant Parker has knowingly and willfully produced, reproduced, and distributed HPG's Copyright Works without HPG's consent or any legal justification or excuse.

97.     Upon information and belief, Defendants have profited from the use and promotion of the infringing files.

98.     Upon information and belief, Defendants, unless enjoined by this Court, intend to continue their course of conduct to wrongfully use, infringe upon, distribute, and otherwise profit from HPG's Copyright Works.

99.     The natural, probable, and foreseeable results of Defendants' wrongful conduct have been and continue to deprive HPG of the rights and benefits granted to it under copyright, including the exclusive right to use, reproduce, and exploit HPG's copyrights in the Copyright

Works, and to deprive HPG of the goodwill associated with the copyrighted subject matter, and to injure HPG's relations with present and prospective customers.

100.    By its actions alleged above, Defendants have infringed and violated HPG's exclusive rights under copyright, and HPG is entitled to all of the remedies afforded by the Copyright Act, including HPG's exclusive rights under copyright in violation of 17 U.S.C. § 501, by producing and distributing upon the market, files that are substantially similar to HPG's copyrighted Copyright Works, all without HPG's authorization and consent.

101.    Upon information and belief, Defendants' infringement of HPG's copyrights is willful and deliberate and Defendants have profited at the expense of the Company.

102.    Defendants' conduct has caused, and will continue to cause irreparable injury to HPG, for which it has no adequate remedy at law. Unless this Court restrains Defendants' infringement, this harm will continue into the future. Accordingly, HPG is entitled to preliminary and permanent injunctive relief.

WHEREFORE, Plaintiff respectfully requests judgment in its favor, and against Defendants, of an injunction from the conduct set forth above, an award of damages, and attorneys fees and costs, as set forth in its Prayer for Relief.

### COUNT IV

### INDUCING COPYRIGHT INFRINGEMENT
### *PLAINTIFF v. HILTON*

103.    Plaintiff incorporates paragraphs 1 through 102 as if set forth fully herein.

104.    Upon information and belief, Hilton induced Parker to infringe Plaintiff's copyrights, including by using, distributing, downloading and executing the Copyright Works

without authorization in violation of Sections 106 et seq. and Section 601 of the Copyright Act, 17 U.S.C. §§106 et seq., and 501.

105.    Hilton's acts of inducing copyright infringement were willful and in disregard of and with indifference to the rights of Plaintiff, and Hilton derived a direct financial benefit therefrom.

106.    As a direct and proximate result of the infringement by Hilton, Plaintiff is entitled to damages and Hilton's profits in amounts to be proven at trial.

WHEREFORE, Plaintiff respectfully requests judgment in its favor, and against Defendants, of injunctive relief from the conduct set forth above, an award of damages, and attorneys fees and costs, as set forth in its Prayer for Relief.

## COUNT V

### FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125
### *PLAINTIFF v. DEFENDANTS*

107.    Plaintiff incorporates paragraphs 1 through 106 as if set forth fully herein.

108.    This cause of action arises under 15 USC §§1125 (a)(1)(A) and also §§43(a)(1)(A) and (a)(1)(b) of the act of Congress of July 5, 1946, the Lanham Act.

109.    The products and materials provided, used, and distributed by Defendants use a copy, variation, simulation, or colorable imitation of HPG's products and materials, and constitute a false designation of origin, a false description and representation of goods sold by Defendants, and a false representation that Defendants' goods are sponsored, endorsed, licensed, or authorized by, or affiliated or connected with HPG.

110.    Upon information and belief, Defendants have used a copy, variation, simulation, or colorable imitation of HPG's products and materials containing HPG's name and logo, with full knowledge of the sale of HPG's instruments of service, products and materials by HPG.

111.    The representation of the files in the Hilton Drive including but not limited to the naming of the files with the Parker designation constitutes a false designation of HPG's Instruments of Service.

112.    Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

113.    Upon information and belief, by reason of Defendants' conduct, actual instances of confusion have occurred or are likely to occur.

114.    Defendants have displayed a willful course of conduct in creating a likelihood of confusion and destroying HPG's goodwill symbolized by HPG's instruments of service, products and materials.

115.    Defendants' conduct has caused and will continue to cause irreparable injury to HPG unless enjoined by this Court, and HPG has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests judgment in its favor, and against Defendants, of injunctive relief from the conduct set forth above, an award of damages, and attorneys fees and costs, as set forth in its Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE,** as to all counts, Plaintiff respectfully requests that the Court enter judgment in its favor and award the following relief against Defendants:

A.  A preliminary and permanent injunction enjoining Defendants, their agents, employees, attorneys, and all others in concert or participation with any of them from maintaining, using, disclosing or disseminating any confidential and/or proprietary

information of Plaintiff, including all such information the Defendants misappropriated from Plaintiff, pursuant to 18 U.S.C. § 1836(b)(3)(A) and/or 12 Pa. C.S. § 5303(a);

B. An order requiring the return of any and all Confidential Information of Plaintiff and/or proprietary information in the possession of Defendants;

C. A preliminary and permanent injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with Defendants from:

    i. Manufacturing, selling, distributing, advertising, promoting, or authorizing any third party to manufacture, sell, distribute, advertise, or promote the Defendants' products or materials or any other item that infringes Plaintiff's rights;

    ii. Selling, using, or authorizing any third party to sell or use any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's products or materials in any manner or form, or marketing, advertising, or promotion of the same;

    iii. Imitating, copying, or making any unauthorized use of Plaintiff's products or materials or any copy, simulation, variation, or imitation thereof;

    iv. Registering or applying to register as a copyright, trademark, trade name, or other source identifier or symbol of origin any copyright, mark, trade dress, or name that infringes or is likely to be confused with Plaintiff's Copyright Works or its materials or products;

    v. Directly or indirectly infringing Plaintiff's copyrights or continuing to market, sell, offer, dispose of, license, lease, transfer, display, advertise, reproduce,

develop, or manufacture any works derived from Plaintiff's products and materials, or any of Plaintiff's copyrights, or to participate or assist in any such activity;

vi. Continuing to market, offer, sell, dispose of, license, transfer, exploit, advertise, promote, reproduce, develop, manufacture, import, or contribute to or actively participate in the marketing, offering, sale, disposing of, licensing, transferring, exploiting, advertising, promotion, reproduction, development, manufacture, or importation of any products or materials that bear, contain, or incorporate any unauthorized copy or reproduction of the Copyright Works or any design substantially similar thereto or derived therefrom; and

vii. Aiding, assisting, or abetting any other party in doing any act prohibited by subparagraphs 1-6;

D. An order requiring that all infringing articles in any of Defendants' possession or under its control and the means by which such infringing articles were misused or reproduced be impounded and destroyed;

E. Compensatory damages as Plaintiff has sustained or will sustain by reason of Defendants' copyright infringement;

F. All gains, profits, property, and advantages obtained or derived by Defendants from their acts of copyright infringement;

G. Exemplary and punitive damages as the Court finds appropriate to deter any willful infringement;

H. Actual loss caused by the misappropriation, plus unjust enrichment caused by misappropriation that is not taken into account in computing actual loss, or a reasonably

royalty for unauthorized use or disclosure of the trade secrets, pursuant to 18 U.S.C. § 1836(b)(3)(B) and/or 12 Pa. C.S. § 5304(a);

I.  Double damages pursuant to 12 Pa. C.S. § 5304(b);

J.  A preliminary and permanent injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with Defendants from:

    i.  Making or displaying any statement or representation that is likely to lead the public or the trade to believe that Defendants' goods or services are in any way associated with or affiliated with, or approved, endorsed, licensed, sponsored, authorized, or franchised by or are otherwise connected with Plaintiff;

    ii.  Using or authorizing any third party to use in connection with the rendering, offering, advertising, promotion, or importing of any goods, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress which falsely associate such goods or services with Plaintiff or tend to do so;

    iii.  Engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of Plaintiff's rights;

    iv.  Aiding, assisting, or abetting any other party in doing any act prohibited by subparagraphs 1-6.

K.  Such damages as Plaintiff has sustained or will sustain by reason of Defendants' unfair competition.

L.  All gains, profits, property, and advantages derived by Defendants from such conduct; and pursuant to 15 U.S.C.§ 1117, awarding Plaintiff an amount up to three times the

amount of actual damages sustained as a result of Defendants' violation of the Lanham Act.

M.  Such actual and nominal damages as may be proven as a result of Defendants' wrongdoing;

N.  Interest;

O.  Costs;

P.  Statutory and contractual attorneys' fees; and

Q.  Such other relief as the Court deems just and proper.

Dated:  <u>November 4, 2019</u>

<u>/s/ Zachary Glaser</u>
Zachary C. Glaser, Esquire
Anthony S. Potter, Esquire
Gregory A. Grissett, Esquire
Joseph P. Mathew, Esquire
OFFIT KURMAN, P.C.
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103
(t) (267) 319-1300
(f) (267) 338-1335
zglaser@offitkurman.com
apotter@offitkurman.com
ggrissett@offitkurman.com
jmathew@offitkurman.com
*Attorneys for Plaintiff*

## VERIFICATION

I, Darryl Rego, in my capacity as President of HPG International, Inc., hereby state that I am familiar with the facts set forth in the foregoing Verified Complaint, am authorized to execute this Verification on behalf of Plaintiff HPG International, Inc., and that the facts set forth herein are true and correct to the best of my knowledge, information, and belief.

This Verification is made subject to the penalties of 28 U.S.C. § 1746 for unsworn falsification to authorities.

Dated: _2 Nov_____, 2019

_____
Darryl Rego
President, HPG International, Inc.

25